IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| SCOTT GRAY, | ) | Case No. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| DOUGLAS COUNTY, NEBRASKA, a Political Subdivision, | ) ) | |
| | ) | **COMPLAINT AND JURY DEMAND** |
| KATHY ALLEN, individually and in her official capacity, | ) ) | |
| | ) | |
| PATRICK BLOOMINGDALE, individually and in his official capacity, | ) ) | |
| | ) | |
| Defendants. | ) | |

COMES NOW the Plaintiff SCOTT GRAY, by and through undersigned counsel, and hereby files this Complaint against DOUGLAS COUNTY, NEBRASKA, KATHY ALLEN and PATRICK BLOOMINGDALE and states and alleges as follows:

**PARTIES-VENUE-JURISDICTION**

1.      Plaintiff, Scott Gray (hereinafter "Gray"), at all relevant times alleged herein, was a resident of Omaha, Douglas County, Nebraska.

2.      At all relevant times, Douglas County, Nebraska has continuously been a political subdivision doing business in the State of Nebraska.

3.      At all relevant times, Kathy Allen was a resident of Douglas County, Nebraska and was employed by Defendant Douglas County as the Director of Douglas County 911.

4.      At all relevant times, Patrick Bloomingdale was a resident of Douglas County, Nebraska and was employed by Defendant Douglas County as Chief Administrative Officer.

5.      This Court has original jurisdiction over the claims arising under federal law and

concurrent jurisdiction over state law claims.

6.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 and the Court's

pendent claim jurisdiction under 28 U.S.C. §1367(a).

7.      Venue is appropriate in this District under 28 U.S.C. §1391(b) and (c).

**FACTUAL BACKGROUND**

8.      In approximately 2020, Gray was approached by Kathy Allen (hereinafter "Allen"),

Director for Douglas County 911 to apply for the position of Deputy Director for Douglas County

911.  Gray advised Allen that he would be willing to consider the position in the future, but he was

not ready to leave his position with the Omaha Police Department at that time.

9.      During 2022, Gray began to reconsider the Deputy Director position, and decided

to reach out and apply following the 2022 Douglas County Sheriff's election depending on who

was elected.

10.      Gray emailed Allen on November 29, 2022, requesting to meet with her.  They met

that same day at Allen's office, and they discussed the Deputy Director position.  Allen confirmed

she still wanted to fill the position and Gray indicated his interest and salary request.  Gray

indicated that based on the posted salary range from the 2019 listing, he would need to be near the

top of that range.  Allen indicated that his salary request would be possible.

11.      As the November 29, 2022, meeting continued, it became an informal interview,

with discussion of benefits, questions about his interest, county government and the position, and

they touched on the sheriff's race.  Allen mentioned that Greg Gonzalez, who had recently lost the

sheriff's election had previously approached her for a job with 911. When specifically asked by

Allen, Gray discussed his opinions of Gonzales, his knowledge of some of the allegations that

were made against Gonzales in the sheriff's race, and how Gray thought the election yielded the

right result in favor of Hanson.  By the end of the interview, Allen seemed happy about working with Gray and mentioned how she could use his help with different departments and staff.

12.     In January 2023, Gray and Allen further discussed the Deputy Director position. Allen asked Gray if he was part of a secret plot by Aaron Hanson to take over county agencies. Shocked, Gray assured her that he was not part of such efforts.

13.     Gray sent Allen a follow-up email on January 27, 2023, reiterating that his desire for the Deputy Director position was for him and his family and had nothing to do with anyone else.

14.     Over the next several months, Allen and Gray had several short phone conversations about the Deputy Director position.  Allen told Gray she needed to rewrite the job posting since it was old and that it would take a while to accomplish that task. Periodically, Allen and Gray reached out to each other to ask if Gray was still interested or when the position would post.

15.     While waiting for the updated job posting, Gray joined the Association of Public-Safety Communications Officials ("APCO"), an industry organization that provides some professional certifications mentioned in the original job posting.  Although Allen told Gray not to worry about obtaining the certifications, Gray thought it would be wise to join the organization and become better informed about industry standards and trends.

16.     On June 8, 2023, Gray and several others participated in a product demonstration requested by Douglas County Sheriff Hanson. The product that was demonstrated was intended for 911 use. Gray reached out to Allen to inquire about her familiarity with the product. Allen indicated that she was not familiar with the product, so Gray called her the next day to discuss.

Allen was upset that Douglas County Sheriff Hanson had arranged for the product demonstration to other 911 User Board members and indicated that she felt the sheriff was going behind her back.

17.     At the next 911 User Board meeting on June 28, 2023, the product demonstration was discussed and Gray agreed with Allen that introducing the product at that time was not ideal because of other upgrades and improvements already in process.

18.     On another occasion when Gray inquired about the Deputy Director posting, Allen made mention of dealing with Douglas County Sheriff Hanson again.  Gray told Allen that if she hired him, Gray believed that he could work with Sheriff Hanson without any issue.

19.     The Deputy Director of 911 Communications position posted on October 6, 2023.

20.     Gray submitted his application on October 9, 2023.

21.     The position closed on November 9, 2023.

22.     Gray participated in a phone interview with Allen on December 15, 2023.  It was a casual interview during which salary was discussed again.  Gray indicated that he was flexible in his salary requirements, stating that he did not expect to earn what he currently did with the Omaha Police Department, but he did see the position as an executive level position worthy of higher pay.  Allen seemed to agree with Gray's thoughts on salary and at no time expressed any concern with the salary Gray sought.

23.     Gray had an in-person interview with Allen and Patrick Bloomingdale, (hereinafter "Bloomingdale") Chief Administrative Officer for Douglas County on December 27, 2023.  Allen greeted Gray and commented that he was "wearing a suit and everything." Gray responded "Of course. This is a big deal to me."

24.     The December 27, 2023 interview with Allen and Bloomingdale was unusual to Gray's in his experience as a job candidate, interviewer and assessor.  The questions being asked

seemed to be unscripted and the conversation veered into local politics and the Omaha city government.  Unprompted, Bloomingdale told Gray that he gets along well with the Mayor.  Then Bloomingdale asked about Gray's relationship with Douglas County Sheriff Hanson.  Gray told Bloomingdale that he and Sheriff Hanson have known each other professionally for about 25 years, but they are not friends who interact socially.  Bloomingdale then went on to ask Gray about his opinion on certain statements Hanson made during the election about taking over 911 and Douglas County Corrections. Gray told Bloomingdale and Allen that he was not concerned with the statements made by Hanson or about working with Hanson. Bloomingdale told Gray that he "liked" Hanson, but his comments about recent events involving a photo of a goat on social media implied that Hanson did not have a good relationship with 911. Gray told Bloomingdale that he was not influenced by Hanson and did not view his position as Sheriff to be a problem if Gray was hired as the Deputy Director.

25.     The interview seemed to get back on track with standard questions regarding next-gen 911, leadership style, union contracts, CALEA, disciplinary theory and other topics.  At the end of the interview, Gray offered to attend call taker/dispatcher training to learn more about their job specifics.  Allen thought that was a great idea.  Bloomingdale said that Allen would make a decision in the next week or so and they hoped to have someone onboarded by February 2024.

26.     Several weeks passed with no news from Allen. Between that and the multiple comments about Sheriff Hanson, Gray was increasingly suspicious that Allen and/or Bloomingdale felt that he politically supported and had a close political relationship with Sheriff Hanson.  He texted Allen on January 11, 2024 to reassure her that, if hired for the position, his commitment would be to his position with 911.

27.     Allen called Gray on January 17, 2024, and advised him that due to his salary request they had to go with another candidate. Gray asked to negotiate regarding salary and Allen told him it was too late. She further told Gray that the chosen candidate came in $30,000.00 less, so they went with that person.  She added that Gray should "be patient" because the chosen candidate still needed to pass a background check and other pre-employment steps.

28.     On January 22, 2024, Gray emailed Allen asking her who the Deputy Director position had been offered to, as it was a matter of public record. Allen never responded.

29.     Mr. Greg Gonzales started working in the position of Deputy Director of 911 for Douglas County on February 20, 2024.  Not only was Gray more qualified for the Deputy Director position than Gonzales, but Gray would also have passed comprehensive background screenings.

30.     If Gray had been hired in the position of Deputy Director, Gray would have earned between $119,000 to $145,000, plus benefits. As of the date of this filing, Gray's lost wages resulting from the Defendants' wrongful conduct are approximately $40,000 to $48,000 and are continuing. As part of his compensation, Plaintiff also received health benefits, retirement contributions and vacation pay, in an amount that is not presently known by Plaintiff and will be subject to further discovery in this matter.

## COUNT ONE

### Violation of the First Amendment

### 42 U.S.C. §1983-Discrimination

31.     Plaintiff hereby incorporates paragraphs 1 through 30 as if fully set forth herein and states:

32.     Plaintiff's speech and freedom of assembly are protected by the First Amendment.

33.     Defendants discriminated against Plaintiff related to his application for

employment.

34.    Plaintiff's protected speech and freedom of assembly was a substantial or motivating factor in the Defendants' decision to take discriminatory action against Plaintiff by not hiring him.

35.    As a result of Defendants' wrongful conduct, Plaintiff has in the past and will in the future suffer injuries and damages, including, but not limited to mental and emotional distress; humiliation; embarrassment; lost enjoyment of life; lost wages and benefits; front pay and other emoluments of employment.

**COUNT TWO**

**Violation of the First Amendment**

**42  U.S.C. §1983-Retaliation**

36.    Plaintiff hereby incorporates paragraphs 1 through 35 as if fully set forth herein and states:

37.    Plaintiff's speech and freedom of assembly are protected by the First Amendment.

38.    Defendants took retaliatory adverse action against Plaintiff related to his application for employment.

39.    Plaintiff's protected speech and freedom of assembly was a substantial or motivating factor in the Defendants' decision to take retaliatory adverse action against Plaintiff.

40.    As a result of Defendants' wrongful conduct, Plaintiff has in the past and will in the future suffer injuries and damages, including, but not limited to mental and emotional distress; humiliation; embarrassment; lost enjoyment of life; lost wages and benefits; front pay and other emoluments of employment.

## COUNT THREE

### Violation of Neb. Rev. Stat. §23-414

41.     Plaintiff hereby incorporates paragraphs 1 through 40 as if fully set forth herein and states:

42.     Defendant Douglas County failed to hire Plaintiff for the Deputy Director of 911 position because of his perceived political relationship or affiliation with the Douglas County Sheriff and/or Plaintiff's political views related to the Douglas County Sheriff.

43.     Defendant Douglas County's failure to hire Plaintiff due to either his perceived relationship with an elected official and/or his political views violates Neb. Rev. Stat. §23-414.

44.     There is a causal connection between Plaintiff's protected activity and/or political views and Defendant Douglas County's refusal to hire Plaintiff.

45.     As a result of Defendant Douglas County's wrongful conduct, Plaintiff has in the past and will in the future suffer injuries and damages, including, but not limited to mental and emotional distress; humiliation; fear, embarrassment; lost enjoyment of life; lost wages and benefits; front pay and other emoluments of employment.

## DAMAGES

46.     Plaintiff hereby incorporates by reference paragraphs 1 through 45 and states:

47.      As a result of Defendants' discrimination and retaliation, Plaintiff has suffered damages and seeks the following relief:

   a. Back pay and lost benefits to the time of trial;

   b. Front pay including retirement and other benefits;

   c. Compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and

other nonpecuniary losses;

d.  Attorney's fees, expert witness fees and other reasonable costs;

e.  Pre-judgment and post judgment interest; and,

f.  All other damages allowable under federal and state law.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount which will fully and fairly compensate him for his injuries and damages, for all his general, special and punitive damages, for costs, attorney's fees, interest and for such other relief as just and equitable. Plaintiff demands a trial by jury.

Dated: June 14, 2024.

SCOTT GRAY, Plaintiff

BY:     s/ Jennifer Turco Meyer
        Jennifer Turco Meyer, #23760
        Of Dyer Law, P.C., LLO
        2611 S. 117th Street
        Omaha, Nebraska 68144
        (402) 393-7529
        (402) 391-2289 facsimile
        Jennifer@dyerlaw.com
        Attorney for Plaintiff